## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUNCO TRANSPORTATION, INC., MICHAEL RUNCO, RANDY PARRY and DIANE PARRY, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | CIVIL ACTION NO. _____ |
| v. | : | |
| | : | |
| MID VALLEY SCHOOL DISTRICT, CATHY JONES, BOROUGH OF THROOP and KEITH JONES, | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendants.** | : | **(ELECTRONICALLY FILED)** |

### COMPLAINT

Plaintiffs Runco Transportation, Inc., Michael Runco, Randy Parry and Diane Parry, by and through their undersigned counsel, hereby complain of the above-named Defendants as follows:

## I.   THE PARTIES

1.   Plaintiff Runco Transportation, Inc. ("Runco Transportation") is a business corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Runco Transportation provided school busing services to Defendant Mid Valley School District.

2.    Plaintiff Michael Runco ("Runco") is a competent adult individual residing at 414 Susquehanna Avenue, Olyphant, Pennsylvania 18447.  At all times relevant hereto, Runco owned and/or operated Runco Transportation.

3.    Plaintiffs Runco and Runco Transportation shall be referred to in this Complaint collectively as the "Runco Plaintiffs".

4.    Plaintiff Randy Parry ("Mr. Parry") is a competent adult individual residing at 400 Joan Drive, Olyphant, Pennsylvania 18447.  At all times relevant hereto, Mr. Parry served as the former Superintendent of Defendant Mid Valley School District.

5.    Plaintiff Diane Parry ("Mrs. Parry") is a competent adult individual residing at 400 Joan Drive, Olyphant, Pennsylvania 18447.  At all times relevant hereto, Mrs. Parry served as a former secretary and Transportation Director for Defendant Mid Valley School District.

6.    Mr. and Mrs. Parry shall be referred to herein collectively as the "Parrys".

7.    Defendant Mid Valley School District ("Mid Valley" or "School District") is a school district duly organized, established and existing under the laws of the Commonwealth of Pennsylvania, which maintains a place of business at 52 Underwood Road, Throop, Pennsylvania 18512.

8.     Defendant Cathy Jones ("Mrs. Jones") is a competent adult individual who, at all times relevant hereto, served as a member of the Mid Valley School Board. At all times relevant hereto, Mrs. Jones acted under color of state law and within the course and scope of her duties as a member of the Mid Valley School Board. Moreover, at all times relevant hereto, Mrs. Jones acted as a policymaker of the School District and, in that capacity, had overall control, oversight and/or responsibility for the administration, operation and/or management of the School District. At all times relevant hereto, Mrs. Jones personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

9.     Defendant Borough of Throop ("Borough" or "Throop") is a municipal corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a business address of 436 Sanderson Street, Throop, Pennsylvania 18512.

10.     Defendant Keith Jones is a competent adult individual who, at all times relevant hereto, served as the Chief of Police for the Borough of Throop and its Police Department ("Chief Jones"). At all times relevant hereto, Chief Jones acted under color of state law and within the course and scope of his duties as the Chief of Police. Moreover, at all times relevant hereto, Chief Jones acted as a policymaker of the Borough of Throop and its Police Department and, in that

3

capacity, was responsible for the formulation and/or implementation of all practices, policies and procedures of the Police Department; the discipline, assignment, training and supervision of staff; and all other day-to-day operations, oversight, command and control of the Police Department. At all times relevant hereto, Chief Jones personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

11.     Chief Jones and Mrs. Jones will be referred to herein collectively as the "Joneses".

12.     At all times relevant hereto, Chief Jones and Mrs. Jones were husband and wife. Moreover, the Joneses owned and/or operated K.C. Jones Enterprises, Inc. -- a school bus company with a registered address of Mid Valley Industrial Park, Underwood Road, Olyphant, Pennsylvania 18447. Based on public records, Mrs. Jones served as the President and Chief Jones served as the Vice President of K.C. Jones Enterprises, Inc. At all times relevant hereto, K.C. Jones Enterprises, Inc. was in direct competition with Runco Transportation.

13.     Chief Jones and Mrs. Jones are being sued in both their individual and official capacities.

## II.   JURISDICTION AND VENUE

14.   This Court possesses jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331 & 1343 and 42 U.S.C. § 1983.

15.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events and/or omissions giving rise to the claims set forth herein occurred in this district.

## III.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16.   Plaintiff Diane Parry was employed by the Mid Valley School District for approximately twenty-two (22) years.

17.   Mrs. Parry was initially hired by the School District as a secretary to the high school principal in or around 1991.

18.   In or around 2006, the School District transferred Mrs. Parry to the newly formed Transportation Department as secretary to Mark Mazak, the Director of Transportation.

19.   Mr. Mazak retired in or around 2009, at which time Mrs. Parry assumed the role of Director of Transportation.

20.   For at least a decade prior to 2006, K.C. Jones Enterprises which, again, was owned and operated by the Joneses, was firmly entrenched as the busing and van contractor for the Mid Valley School District.

21.    For the most part, the School District awarded the busing contract to K.C. Jones Enterprises without any competitive bidding process.

22.    However, in or around 2001, the School District implemented a competitive bidding process and solicited bids for the busing contract from various busing companies.

23.    Pursuant to that process, the School District received bids from multiple busing contractors, including K.C. Jones Enterprises and the Runco Plaintiffs.

24.    Although the Runco Plaintiffs underbid K.C. Jones Enterprises by hundreds of thousands of dollars, the School District again awarded the busing contract to K.C. Jones Enterprises for a period of five (5) years.

25.    Despite being awarded the contract, the Joneses were displeased that the Runco Plaintiffs even bid on the contract, and expressed their animosity to various individuals in the community.

26.    That animosity, however, did not stop the Runco Plaintiffs from bidding on the next School District busing contract.

27.    To that end, the School District once again solicited bids for the busing contract in or around 2006.

28.     This time, the School District awarded the contract to the Runco Plaintiffs, thereby ending the Joneses' long tenure as the entrenched bus contractor in the District.

29.     In addition to busing, K.C. Jones Enterprises also lost the contract for van transportation, which was taken over directly by the School District.

30.     From that point forward, the Joneses harbored a personal animus against the Runco Plaintiffs and the School District for what they felt was an intentional interference with their business and livelihood.

31.     Thus, the Joneses took advantage of every opportunity to disparage and/or retaliate against the Runco Plaintiffs after they took over as the busing contractor for the School District.

32.     On one occasion, there was an alleged incident concerning Runco Transportation's performance bond which led to a temporary repossession of buses by Runco's lender.

33.     Upon information and belief, the lender retained a private contractor to temporarily repossess the buses as aforesaid.

34.     Mrs. Jones just happened to be one of the drivers who showed up on behalf of the contractor to repossess the buses.

35.     At that time, Mrs. Jones acted like a child, jumping up and down and loudly cheering as the buses were being taken away.

36.     Mrs. Jones then caused a scene by repeatedly blowing the buses horn as she drove the bus away, while at all times loudly screaming that "Runco was out of business!"

37.     Much to the Joneses' displeasure, Runco was not out of business and continued to provide busing services for the School District.

38.     Thus, the Joneses continued to move forward with their plan to get back at the Runco Plaintiffs.

39.     The Joneses' animus grew so strong that the Joneses eventually decided that, in addition to his position as the Chief of Police for Throop, a spot on the school board would be a perfect forum for them to carry out their ultimate goal of removing Runco Transportation as a busing contractor for the School District.

40.     Accordingly, Mrs. Jones ran for and was elected to a seat on the Mid Valley School Board at or around the end of 2009.

41.     While Mrs. Jones may have campaigned on various platforms, her true agenda in running for office was to eliminate Runco Transportation as a busing contractor in the School District, and anyone who stood in her way for that matter.

42.     In fact, Mrs. Jones confirmed this agenda in statements she made, such as: "I ran for office solely to get rid of Runco".

43.    And at the victory celebration on election night, Chief Jones said, in words or substance, that: "Runco and Mid Valley fucked us, now we are going to fuck them!"

44.    It did not take long for the Joneses to initiate their retaliation campaign against the Runco Plaintiffs and/or those members of the School District who were not supportive of their efforts or otherwise friendly with Runco, including the Parrys.

45.    Within the first few months of her tenure on the school board, Mrs. Jones approached Mr. Parry and requested that Mr. Parry provide her with copies of all of the School District's records on the Runco Plaintiffs, including all personnel records and records relating to drug and alcohol testing on Runco's bus drivers.

46.    Mr. Parry, however, refused to provide those records to Mrs. Jones, and explained to her that it would be improper for him to give that confidential information to an individual board member.

47.    Mrs. Jones did not like that response.

48.    In fact, because she believed the Parrys were personal friends of the Runcos, Mrs. Jones accused the Parrys of covering up for the Runco Plaintiffs.

49.     Mrs. Jones then proceeded to tell Mr. Parry that she and her husband would get the School District and the Runco family back for what they did to her, her family, and her business interests.

50.     Mrs. Jones also told Mr. Parry that the Runco Plaintiffs and the School District took away their livelihood by awarding the bus contract to Runco Transportation.

51.     At some point, Mrs. Jones eventually gained access to the School District's records for the Runco Plaintiffs from an alternative source.

52.     After doing so, Mrs. Jones removed those records from the School District and unlawfully shared them with her husband, Chief Jones.

53.     The confidential information removed from the School District by Mrs. Jones included the identity of the drug and alcohol testing company used by the School District, Foley Services, Inc. ("Foley").

54.     In a complete abuse of his authority as the Chief of Police for Throop, Chief Jones then contacted Foley at the insistence of his wife, Mrs. Jones, seeking additional confidential information related to the School District and the Runco Plaintiffs.

55.     Foley, however, made it very clear that the company took confidentiality very seriously and, accordingly, would not disclose any confidential information related to either Runco Transportation and/or the School District.

56.    As such, Foley instructed Chief Jones to contact Runco Transportation and/or the School District directly for the confidential information he requested.

57.    Apparently not happy with Foley's position, Chief Jones further abused his authority as the Chief of Police by falsely implying that he was conducting a criminal investigation of the School District and/or Runco Transportation.

58.    Chief Jones did so hoping that Foley would reconsider its position and provide him with the confidential information he requested.

59.    Foley, however, remained firm in its position and refused to provide such confidential information to Chief Jones.

60.    In fact, Foley determined that Chief Jones' inquiry into this confidential information was so serious that the company transcribed the recorded phone call, and sent the transcription to the Runco Plaintiffs by letter dated April 23, 2010, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "A".

61.    In that letter, Foley notified the Runco Plaintiffs that:

> On Thursday April 22, 2010 Foley Services Inc (FSI) received a phone call from Keith Jones, who stated that he was the Police Chief in PA, with questions in regards to Runco Transportation.  Below you will find the questions he asked along with the answers FSI provided.

(See Exhibit "A").

11

62.     When confronted about their improper communications with Foley as aforesaid, the Joneses only intensified their campaign of retaliation against the Parrys and the Runco Plaintiffs.

63.     In doing so, the Joneses continued to use and abuse their respective positions of authority to pursue their personal vendetta resulting from the loss of their busing and van contracts.

64.     First, Mrs. Jones repeatedly accused Mrs. Parry of forging, falsifying and/or otherwise altering or tampering with the information contained in the School District's personnel records for the Runco Plaintiffs.

65.     Again, Mrs. Jones made this unfounded accusation because she felt as though the Parrys were supportive of the Runco Plaintiffs.

66.     From that point forward, Mrs. Jones continuously harassed Mrs. Parry and/or intentionally interfered with Mrs. Parry's ability to perform her duties as the Director of Transportation for the School District.

67.     In fact, in an effort to intimidate Mrs. Parry, Mrs. Jones would, on occasion, show up unannounced at Mrs. Parry's office and continuously stare at Mrs. Parry as she performed her duties.

68.     Throughout this same time period, Mrs. Jones repeatedly used board meetings and executive sessions as opportunities to convince the public and/or other members of the school board that the Runco Plaintiffs were running a bad

business, and that Runco Transportation's contract with the School District should be terminated.

69.     At virtually every school board meeting following her election, Mrs. Jones would raise any issue and/or concern she could regarding the transportation services provided by the Runco Plaintiffs.

70.     In fact, when the opportunity presented itself, Mrs. Jones voted against any issue relating to the Runco Plaintiffs, including the payment of Runco Transportation's invoices for services rendered.

71.     On one occasion, Mrs. Jones even confronted the School District's then Business Manager, Joseph Caputo, and questioned his friendship with Runco.

72.     At that time, Mrs. Jones said to Mr. Caputo: "You better watch who you are hanging around with".

73.     On another occasion, after accusing Mr. Caputo of being "in bed" with Runco, Mrs. Jones told Mr. Caputo that: "When Runco goes down, you're going down with him".

74.     Mr. Caputo responded to these statements/threats by telling Mrs. Jones that he did not appreciate her comments, and that she had no right to speak to him in that manner.

75.    In fact, Mr. Caputo believed that these statements/threats were so unwarranted and so offensive that he felt compelled to hire an attorney to send a letter to Mrs. Jones about her abusive, threatening and retaliatory comments.

76.    Mrs. Jones further abused her authority and retaliated against the Runco Plaintiffs by calling their bank to falsely report problems with Runco's buses in an effort to interfere with the Runco Plaintiff's lending relationship with their bank, hoping this would lead to a termination of Runco Transportation's busing contract with the School District.

77.    To make matters worse, the Joneses also continued to use and abuse their authority and retaliate against the Runco Plaintiffs by repeatedly harassing the Runco Plaintiffs and their bus drivers; by constantly following the Runco Plaintiffs' buses without justification or cause; by constantly pulling over the Runco Plaintiffs' buses without justification or cause; by repeatedly calling the Pennsylvania State Police to report alleged violations by the Runco Plaintiffs; and by repeatedly contacting the School District to report alleged violations by the Runco Plaintiffs.

78.    Again, the Joneses engaged in the aforesaid actions in an effort to cause a termination of Runco Transportation's busing contract with the School District.

14

79.     Although Mrs. Jones labored mightily to terminate Runco during the first few years of her tenure on the board, Mrs. Jones did not have the votes she needed to do so.

80.     In fact, Runco's brother, Mark Runco, was on the school board at that time.

81.     The make-up of the board, however, changed at the end of 2011.

82.     Mark Runco lost his seat on the board, and other board members were elected, including Mrs. Jones' personal friend, Donna Dixon.

83.     Thus, Mrs. Jones slowly gained control of the board, which only facilitated her and her husband's efforts to abuse their respective positions of authority and retaliate against Plaintiffs.

84.     To this end, in or around January, 2012, the Joneses were spotted on school grounds personally checking to see if the School District's vans were properly inspected.

85.     A subsequent review of the School District's video surveillance footage confirmed that the Joneses were on campus checking the vans as aforesaid.

86.     In an effort to conceal his actions, Chief Jones personally instructed one of his officers to travel to the School District to issue written warnings to the School District for alleged improper inspection stickers on all fourteen (14) district owned vans.

87.   Not knowing that he and his wife were captured on district video surveillance footage just days earlier, Chief Jones even instructed the officer to lie to district officials about how and when he observed the alleged improper inspection stickers.

88.   To this end, when questioned about his appearance on school grounds that day, the officer falsely stated that he only came to inspect the vans after he noticed the inspection stickers while parked on Underwood Road.

89.   These inspection stickers cannot possibly be seen from that location.

90.   It was only after Mr. Parry challenged the officer's story and alerted him to Chief Jones' presence on video just days earlier that the officer finally stated: "Don't shoot the messenger, I am just doing what I am told, I need a paycheck too".

91.   Chief Jones' retaliatory acts were so egregious that Mr. Parry felt compelled to send a letter to the Mayor of Throop and all Throop Borough Council Members in an effort to put an end to Chief Jones' abuses of authority.

92.   In that letter dated January 30, 2012, a true and correct copy of which is attached hereto as Exhibit "B", Mr. Parry informed the Mayor and Council of Chief Jones' aforesaid abuses of authority and retaliatory actions as follows:

> We believe that some of the incidents that have taken place between the school district and the police department are a direct result of Chief Jones' personal issues with the school district. Chief Jones was released

by the school district as our transportation contractor in 2006 after serving in that capacity for the previous 15 years. Transportation was taken over by Michael Runco and the District at that time. Since this time the relationship between the school district and police has declined.

(See Exhibit "B").

93. Mr. Parry then summarized some of the incidents identified above, including Chief Jones' attempt to contact the School District's drug testing contractor, Foley Services. (See id.)

94. With regard to that incident, Mr. Parry stated:

Since there was no investigation, nor would he be the person to conduct any such investigation, we believe that the information he was requesting was solely for his own personal reasons and personal use. We believe this act was totally inappropriate and unacceptable while acting in his official capacity as Chief of Police. Due to this type of behavior the school district has reasons to mistrust the intentions of Chief Jones and his officers.

The issues faded for a while when it was clear that the majority of our School Board was not going to deal with an issue that they seen as a personal agenda. However, in 2012 when it was seen that the majority of our School Board may change on this issue, the incidents started back up again. Described below are the last two incidents involving the police and Chief Jones.

(Id.)

95. After summarizing certain of the incidents, Mr. Parry concluded the letter by stating as follows:

17

For these reasons we believe that there is a personal agenda that Chief Jones has against the school district and he is using his position and directing the officers in which he is in charge of to go out of their way to target transportation in the Mid Valley School District.

School District Officials met with the State Police Officers regarding these incidents and other issues over the past two years and they agree with the school district. We met with State Police Officers, Astolfi, Jubinsky and Fret who stated that they believe that there are issues that do not seem right in both incidents and that they have received many complaints to look into from the Jones's regarding transportation in the Mid Valley School District over the past few years. They advised us to first address Throop Council regarding the problem to see if it can be rectified at the local level. If not, then to notify the District Attorney's Office for help with the issue.

Our intent for meeting with council is to restore the cooperative working relationship between the school district, council, and the police department which we have always had in the past. We ask that the council take steps to ensure this relationship continues and to take any personal issues out of the dealings between the school district and our local police department.

(Id.)

96.    In addition to the aforesaid letter, Runco and Mr. Parry personally attended Throop Borough Council meetings in a further effort to speak out and put an end to the Joneses' abuse of power and retaliatory actions.

97.    Runco also went directly to the borough building and requested to personally meet with Borough Council President, Thomas Lukasewicz.

98. Runco eventually met with Mr. Lukasewicz and provided him with a detailed explanation of the abuses and retaliatory actions committed by the Joneses against Runco and the Parrys.

99. Moreover, at all times relevant hereto, Stanley Lukowski served as the Mayor for the Borough of Throop.

100. Mayor Lukowski is also the ex-husband of Plaintiff Diane Parry.

101. Accordingly, Mrs. Parry also reached out to her ex-husband in his capacity as the Mayor to complain, speak out and/or put an end to the acts of abuse and retaliation committed by the Joneses.

102. Although it is believed that Chief Jones was instructed not to go on School District property unless it was an absolute emergency, Chief Jones failed and/or refused to follow those instructions, and the Joneses' actions against the Runco Plaintiffs and the Parry's intensified as a result of the aforesaid complaints.

103. Chief Jones continued to personally target and retaliate against Mr. Parry for reporting his conduct by repeatedly patrolling and driving around the perimeter of the district's administration building.

104. In another incredible display of an abuse of power and retaliation, Chief Jones himself -- or other officers acting at his instruction -- would travel to district buildings and intentionally set off the security alarms in the middle of the

night, thereby forcing Mr. Parry or other administrators to leave his home and respond on behalf of the School District.

105.    In fact, this was done so many times by Chief Jones and/or his officers that Chief Jones initiated a knowingly false magistrate complaint against the School District seeking reimbursement from the District for the costs and expenses incurred by the Department in responding to the false alarms that they themselves created.

106.    The Runco Plaintiffs and the Parrys continued to fight back, speak out and challenge the abuses and retaliatory actions taken by the Joneses.

107.    However, this only caused the Joneses to escalate their abuses of authority and retaliatory acts.

108.    Mrs. Jones continued to falsely accuse Mrs. Parry of not being truthful when asked certain questions about the Runco Plaintiffs, and continued to falsely accuse Mrs. Parry of tampering with or otherwise altering School District records.

109.    Mrs. Jones also continued to accuse Mrs. Parry of covering-up for the Runco Plaintiffs for, what she believed, was misconduct on the part of the Runco Plaintiffs.

110.    She also continued to show up unannounced at Mrs. Parry's office in a further attempt to obstruct, harass, intimidate and/or otherwise interfere with the

performance of Mrs. Parry's duties as the Director of Transportation for the School District.

111. Mrs. Jones had no legitimate reason to engage in such conduct and, needless to say, Mrs. Parry became extremely fearful of Mrs. Jones and the hostile working environment she created.

112. In fact, Mrs. Jones' actions and abuses as aforesaid made working conditions for Mrs. Parry so unbearable and so intolerable that she was forced to resign from the School District in or around July, 2012.

113. At the time of her constructive discharge, Mrs. Parry was three (3) years shy of twenty-five (25) years of employment with the School District and, therefore, sustained a substantial reduction in her monthly pension payment.

114. As for the Runco Plaintiffs, the Joneses continued to intentionally target, harass and/or follow Runco's buses and bus drivers all over the Mid Valley for the sole reason of furthering their personal vendetta against the Runco Plaintiffs.

115. In fact, Mrs. Jones would regularly and strategically sit in a certain location, and then personally follow Runco's buses in her own vehicle, sometimes following a bus all the way back to Runco's bus lot.

116. Mrs. Jones would also personally harass and verbally taunt Runco's bus drivers.

117.   Just one week prior to the start of the 2012-2013 school year, Mrs. Jones showed up unannounced at Runco's bus lot in an attempt to personally inspect Runco's buses.

118.   Although three (3) of Runco's twelve (12) buses were awaiting final inspection because of a scheduling conflict by the Pennsylvania State Trooper assigned to inspect the buses, Mrs. Jones knew that those buses would be properly and fully inspected prior to the start of the school year.

119.   She also knew that even if those three (3) buses were not inspected, Runco Transportation only needed eight (8) buses to satisfy his contract with the School District for the 2012-2013 school year and, therefore, was in full compliance with his contractual obligations.

120.   However, Mrs. Jones intentionally ignored these crucial facts and, instead, further promoted her personal vendetta against the Runco Plaintiffs by stating that she would nevertheless make sure that Runco Transportation's contract with the School District was terminated.

121.   Interestingly enough, although the School District had another busing contractor, Mrs. Jones did not take any of the aforesaid actions against that contractor.

122. In fact, Mrs. Jones paid no attention to that contractor, and intentionally overlooked and/or ignored some of the same issues or concerns she allegedly had with the Runco Plaintiffs.

123. The Joneses selectively targeted the Runco Plaintiffs for personal reasons, and their retaliatory actions were not based on any legitimate concerns they had as a school board member or Chief of Police.

124. If they were, Mrs. Jones would have at least attempted to take the same actions against the school district's other busing contractor.

125. A special school board meeting was scheduled immediately following Mrs. Jones' personal inspection of Runco's buses as aforesaid.

126. Although that meeting was held on or about September 12, 2012, the meeting was illegal because it was held without proper notice and/or advertisement under Pennsylvania's Sunshine Laws.

127. However, the meeting was rescheduled for the following week, September 19, 2012, and the Runco Plaintiffs were simply suspended in the interim.

128. Although Runco's buses were properly and fully inspected by the Pennsylvania State Police prior to the September 19 meeting, and although Runco had enough buses to satisfy his contract with the School District regardless of whether those buses were inspected, the Joneses -- and those acting in concert with

them -- were able to manipulate other board members to move and vote in favor of terminating Runco Transportation's contract with the School District, without regard to merit.

129. In a careful and calculated effort to conceal their abuses, manipulation and personal scheme to destroy the Runco Plaintiffs, Mrs. Jones abstained from voting on the motion to terminate.

130. She did not do so, however, at the previous illegal meeting when she initially voted in favor of the Runco Plaintiffs' termination.

131. In fact, it is believed and therefore averred that the Joneses initiated their personal efforts to manipulate the board to terminate the Runco Plaintiffs prior to the September 12 and 19 board meetings.

132. To this end, the Joneses had many discussions about the situation outside the public board forum in an effort to manipulate the board vote, and were at all times secretly plotting and lobbying to terminate the Runco Plaintiffs.

133. Upon information and belief, Mrs. Jones' desire to terminate the Runco Plaintiffs was so great that she arranged for and participated in secret meetings about the matter at another board member's home.

134. Mrs. Jones even went as far as offering to trade votes on other issues without regard to merit.

135.   The Joneses' abuses and manipulative efforts as aforesaid were also based on knowingly false and/or misleading statements, as well as material omissions of fact.

136.   Although the President of the school board voted to terminate the Runco Plaintiffs, he subsequently acknowledged that this was a personal vendetta by Mrs. Jones.

137.   The President did so by confirming to Runco that if Mrs. Jones were not on the school board, Runco Transportation would still be providing transportation services for the School District.

138.   Moreover, while the School District's current busing contractor committed multiple violations or infractions since Runco's removal, Mrs. Jones took no action to initiate a termination of its contract.

139.   This is just further evidence that this was nothing more than a personal vendetta against the Runco Plaintiffs.

140.   Nevertheless, the Parrys and the Runco Plaintiffs at all times spoke out and challenged the personal abuses and retaliatory actions being committed by the Joneses as set forth in detail above.

141.   Mr. Parry continued to speak out about Chief Jones' misconduct and retaliatory actions.

142.   In response, Chief Jones conspired with his wife, Mrs. Jones, to have Mr. Parry eliminated as the Superintendent from the School District.

143.   To this end, Mrs. Jones agreed that she would use her position of authority as a school board member to make sure that Mr. Parry's contract as the Superintendent would not be renewed unless he "backed off" and stopped complaining to Borough officials about her husband's misconduct.

144.   In an effort to conceal their conspiracy, the Joneses solicited the assistance of their personal friend, Ms. Dixon.

145.   At the Joneses' request, Mrs. Dixon approached Mr. Parry and told him that he needed to "back off of Chief Jones" if he wanted to continue working with the School District.

146.   She further stated that "I will make sure you keep your job if you do so".

147.   However, Mr. Parry failed and/or refused to be bullied by the Joneses and those acting in concert with them, and continued to raise concerns about the Joneses' misconduct.

148.   As a result, the Joneses made good on their threats to remove Mr. Parry as the Superintendent of the School District.

149.   As they did with the Runco Plaintiffs, the Joneses personally plotted and lobbied for the non-renewal of Mr. Parry's contract because of his alleged

friendship and/or affiliation with the Runco Plaintiffs, and because of his refusal to cooperate and/or his refusal to "back off of Chief Jones".

150.   Through their personal lobbying efforts, the Joneses -- and those acting in concert with them -- were again able to manipulate other board members to move and vote in favor of not renewing Mr. Parry's contract as the Superintendent of the School District.

151.   They did so, again, based on knowingly false and/or misleading statements, as well as material omissions of fact.

152.   It is also believed and, therefore averred, that Mrs. Jones likewise offered to trade votes on other issues without regard to merit.

153.   As such, Mr. Parry was removed as Superintendent of the School District, effective December 31, 2013.

154.   Despite his diligent efforts, Mr. Parry was unable to secure immediate employment elsewhere, and just recently secured alternative and temporary employment at a significantly reduced salary.

155.   However, as of the date of the filing of this Complaint, Mr. Parry is once again unemployed.

156.   In addition, as a result of the substantial interference with and retaliatory termination of the Runco Plaintiffs' contract based on the comprehensive and concerted actions of the Joneses as detailed at length above, the

Runco Plaintiffs were completely driven out of business, thereby resulting in a discounted sale of a few buses and the repossession of the others by the bank.

157. After all, the buses were purchased by the Runco Plaintiffs and financed by the bank solely in connection with the Mid Valley busing contract.

## COUNT I
## ALL PLAINTIFFS v. THE JONESES
### (42 U.S.C. § 1983 – First Amendment Retaliation)

158. The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

159. As set forth more fully above, Plaintiffs reported, spoke out, complained of and/or challenged the aforementioned abuses of power, harassment, misconduct and retaliatory actions to the Joneses themselves, as well as to other agents of the Mid Valley School District, the Mayor of Throop and/or Throop Borough Council Members.

160. Plaintiffs' communications with the aforesaid officials involved a matter of public concern, which is protected speech under the First Amendment to the United States Constitution.

161. Plaintiffs' right to engage in such protected speech under the First Amendment was clearly established at all times relevant to this Complaint.

162. However, in direct response to Plaintiffs' protected communications and concerns, and as a means of oppressing and suppressing the exercise of their

protected First Amendment rights, the Joneses engaged in a campaign of retaliation against Plaintiffs in the manners outlined in detail above.

163.  At all times relevant hereto, the Joneses acted in their individual capacities and under color of state law, and personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

164.  Moreover, at all times relevant hereto, the Joneses' actions were willful, wanton, malicious, and taken with reckless or callous disregard for Plaintiffs' federally protected rights under the First Amendment.

165.  As a direct and proximate result of the Joneses' retaliatory misconduct, Plaintiffs have sustained substantial economic losses, and have suffered, and continue to suffer, from humiliation, intimidation, emotional distress, and damage to their respective reputations and good will.

WHEREFORE, Plaintiffs Runco Transportation, Inc., Michael Runco, Randy Parry, and Diane Parry demand judgment on this Count in their favor and against Defendants Cathy Jones and Keith Jones, jointly and/or severally, for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

## COUNT II
## ALL PLAINTIFFS v. MID VALLEY SCHOOL DISTRICT and BOROUGH OF THROOP
### (42 U.S.C. § 1983 – First Amendment Retaliation)

166.   The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

167.   As referenced above, Mrs. Jones -- as a school board member -- at all times acted as a policymaker of the School District and, in that capacity, had overall control, oversight and/or responsibility for the administration, operation and/or management of the School District.  At all times relevant hereto, Mrs. Jones personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

168.   Likewise, Chief Jones -- as the Chief of Police -- at all times acted as a policymaker of the Borough of Throop and its Police Department and, in that capacity, was responsible for the formulation and/or implementation of all practices, policies and procedures of the Police Department; the discipline, assignment, training and supervision of staff; and all other day-to-day operations, oversight, command and control of the Police Department.  At all times relevant hereto, Chief Jones personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

30

169. It is well-established that municipal liability exists when a claim is predicated upon the actions or inactions of a municipality's duly authorized policymakers.

170. To this end, the claim advanced against the Borough of Throop and the Mid Valley School District in this Count is not based on a theory of Respondeat Superior. Rather, said claim is based on the retaliatory acts committed by Defendants Keith Jones and Cathy Jones in their capacity as policymakers for the Borough of Throop and the Mid Valley School District, respectively.

171. As set forth more fully above, Plaintiffs reported, spoke out, complained of and/or challenged the aforementioned abuses of power, harassment, misconduct and retaliatory actions to the Joneses themselves, as well as to other agents of the Mid Valley School District, the Mayor of Throop and/or Throop Borough Council Members.

172. Plaintiffs' communications with the aforesaid officials involved a matter of public concern, which is protected speech under the First Amendment to the United States Constitution.

173. Plaintiffs' right to engage in such protected speech under the First Amendment was clearly established at all times relevant to this Complaint.

174. However, in direct response to Plaintiffs' protected communications and concerns, and as a means of oppressing and suppressing the exercise of their

protected First Amendment rights, the Joneses engaged in a campaign of retaliation against Plaintiffs in the manners outlined in detail above.

175. At all times relevant hereto, the Joneses acted in their official capacities and under color of state law.

176. As a direct and proximate result of the Joneses' retaliatory misconduct, Plaintiffs have sustained substantial economic losses, and have suffered, and continue to suffer, from humiliation, intimidation, emotional distress, and damage to their respective reputations and good will.

177. The Borough of Throop and the Mid Valley School District are subject to liability for the aforesaid retaliatory acts of Defendants Keith Jones and Cathy Jones in their capacity as duly authorized policymakers of the Borough and the School District, respectively.

WHEREFORE, Plaintiffs Runco Transportation, Inc., Michael Runco, Randy Parry, and Diane Parry demand judgment on this Count in their favor and against Defendants the Borough of Throop and the Mid Valley School District, jointly and/or severally, for compensatory damages, together with interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

**COUNT III**
**ALL PLAINTIFFS v. THE JONESES**
**(Conspiracy to Violate Plaintiffs' Civil Rights Under the First Amendment in Violation of 42 U.S.C. § 1983)**

178.  The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

179.  As set forth more fully, in direct response to Plaintiffs' protected communications and concerns, and as a means of oppressing and suppressing the exercise of their protected First Amendment rights to engage in free speech with respect to a matter of public concern, the Joneses conspired with each other to retaliate against Plaintiffs in the manners outlined in detail above.

180.  The above acts of the Joneses constitute a wrongful combination or agreement to deprive Plaintiffs of their rights to free speech under the First Amendment.

181.  At all times relevant to their conspiratorial conduct against Plaintiffs, the Joneses acted in their individual capacities and under color of state law.

182.  Moreover, at all times relevant hereto, the Joneses' actions were willful, wanton, malicious and taken with a reckless or callous disregard for Plaintiffs' federally protected rights under the First Amendment, and in furtherance of the conspiracy to retaliate against Plaintiffs in the manners outlined in detail above.

183.   As a direct and proximate result of the Joneses' conspiratorial and retaliatory misconduct, Plaintiffs have sustained substantial economic losses, and have suffered, and continue to suffer, from humiliation, intimidation, emotional distress, and damage to their respective reputations and good will.

WHEREFORE, Plaintiffs Runco Transportation, Inc., Michael Runco, Randy Parry, and Diane Parry demand judgment on this Count in their favor and against Defendants Cathy Jones and Keith Jones, jointly and/or severally, for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

**COUNT IV**
**THE RUNCO PLAINTIFFS v. THE JONESES**
**(42 U.S.C. § 1983 – Violation of Substantive Due Process Rights Under the Fourteenth Amendment)**

184.   The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

185.   This claim is based on the violations of the Runco Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution as set forth in greater detail herein.

186.   More specifically, under the Substantive Due Process Clause of the Fourteenth Amendment, the Runco Plaintiffs had a protected liberty interest/right to operate/conduct their business free from unreasonable governmental interference and/or the arbitrary exercise of governmental power.

187.   The Joneses, however, violated the Runco Plaintiffs' substantive due process rights by affirmatively abusing their respective positions of authority and depriving the Runco Plaintiffs of their protected interest, in a manner as set forth in detail above, that demonstrates deliberate indifference, gross negligence or arbitrariness, and/or an intent to cause harm.

188.   Moreover, these active, concerted, deliberate and retaliatory actions by the Joneses were so outrageous and egregious as to shock the conscience, and constitute affirmative acts for purposes of liability under the Substantive Due Process Clause of the Fourteenth Amendment.

189.   The egregious and outrageous actions engaged in by the Joneses did not serve any legitimate or justified law enforcement or educational purpose and, instead, were intended solely to injure and inflict harm upon the Runco Plaintiffs.

190.   The Joneses' actions as aforesaid were willful, wanton, malicious, conscience shocking, and demonstrated deliberate indifference, gross negligence, arbitrariness, and/or an intent to cause harm to the Runco Plaintiffs in violation of their clearly established substantive due process rights under the Fourteenth Amendment as set forth more fully above.

191.   At all times relevant hereto, the Joneses acted in their individual capacities and under color of state law, and personally participated in, acted in

concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

192. As a direct and proximate result of the misconduct complained of herein, the Runco Plaintiffs have suffered a deprivation of their guaranteed substantive due process right to operate/conduct their business free from unreasonable governmental interference and/or arbitrary governmental power.

193. As referenced above, the Joneses' constitutional violations as aforesaid completely drove the Runco Plaintiffs out of business, thereby causing substantial economic losses, as well as humiliation, emotional distress and damage to the Runco Plaintiffs' reputation and good will.

194. The damages suffered by the Runco Plaintiffs as aforesaid were foreseeable and a highly predictable consequence of the Joneses' misconduct as complained of herein. In fact, by engaging in such misconduct, the Joneses created the opportunity for the harm to occur, or rendered the Runco Plaintiffs more vulnerable to the harm, which would not have existed absent said actions.

WHEREFORE, Plaintiffs Runco Transportation, Inc. and Michael Runco demand judgment on this Count in their favor and against Defendants Cathy Jones and Keith Jones, jointly and/or severally, for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

## COUNT V
### THE RUNCO PLAINTIFFS v. MID VALLEY SCHOOL DISTRICT and BOROUGH OF THROOP
### (42 U.S.C. § 1983 – Violation of Substantive Due Process Rights Under the Fourteenth Amendment)

195. The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

196. As referenced above, Mrs. Jones -- as a school board member -- at all times acted as a policymaker of the School District and, in that capacity, had overall control, oversight and/or responsibility for the administration, operation and/or management of the School District. At all times relevant hereto, Mrs. Jones personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

197. Likewise, Chief Jones -- as the Chief of Police -- at all times acted as a policymaker of the Borough of Throop and its Police Department and, in that capacity, was responsible for the formulation and/or implementation of all practices, policies and procedures of the Police Department; the discipline, assignment, training and supervision of staff; and all other day-to-day operations, oversight, command and control of the Police Department. At all times relevant hereto, Chief Jones personally participated in, acted in concert with, directed, assisted, knew of, ratified and/or acquiesced in the misconduct complained of herein.

198. It is well-established that municipal liability exists when a claim is predicated upon the actions or inactions of a municipality's duly authorized policymakers.

199. To this end, the claim advanced against the Borough of Throop and the Mid Valley School District in this Count is not based on a theory of Respondeat Superior. Rather, said claim is based on the arbitrary and egregious acts committed by Defendants Keith Jones and Cathy Jones in their capacity as policymakers for the Borough of Throop and the Mid Valley School District, respectively.

200. As set forth more fully above, the Joneses violated the Runco Plaintiffs' substantive due process rights by affirmatively abusing their respective positions of authority and depriving the Runco Plaintiffs of their protected interest, in a manner as set forth in detail above, that demonstrates deliberate indifference, gross negligence or arbitrariness, and/or an intent to cause harm.

201. Moreover, these active, concerted, deliberate and retaliatory actions by the Joneses were so outrageous and egregious as to shock the conscience, and constitute affirmative acts for purposes of liability under the Substantive Due Process Clause of the Fourteenth Amendment.

202.   The egregious and outrageous actions engaged in by the Joneses did not serve any legitimate or justified law enforcement or educational purpose and, instead, were intended solely to injure and inflict harm upon the Runco Plaintiffs.

203.   The Joneses' actions as aforesaid were conscience shocking, and demonstrated deliberate indifference, gross negligence, arbitrariness, and/or an intent to cause harm to the Runco Plaintiffs in violation of their clearly established substantive due process rights under the Fourteenth Amendment as set forth more fully above.

204.   At all times relevant hereto, the Joneses acted in their official capacities and under color of state law.

205.   As a direct and proximate result of the misconduct complained of herein, the Runco Plaintiffs have suffered a deprivation of their guaranteed substantive due process right to operate/conduct their business free from unreasonable governmental interference and/or arbitrary governmental power.

206.   As referenced above, the Joneses' constitutional violations as aforesaid completely drove the Runco Plaintiffs out of business, thereby causing substantial economic losses, as well as humiliation, emotional distress and damage to the Runco Plaintiffs' reputation and good will.

207.   The damages suffered by the Runco Plaintiffs as aforesaid were foreseeable and a highly predictable consequence of the Joneses' misconduct as

complained of herein. In fact, by engaging in such misconduct, the Joneses created the opportunity for the harm to occur, or rendered the Runco Plaintiffs more vulnerable to the harm, which would not have existed absent said actions.

208. The Borough of Throop and the Mid Valley School District are subject to liability for the aforesaid arbitrary and egregious acts of Defendants Keith Jones and Cathy Jones in their capacity as duly authorized policymakers of the Borough and the School District, respectively.

WHEREFORE, Plaintiffs Runco Transportation, Inc. and Michael Runco demand judgment on this Count in their favor and against Defendants the Borough of Throop and the Mid Valley School District, jointly and/or severally, for compensatory damages, together with interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

### COUNT VI
### THE RUNCO PLAINTIFFS v. THE JONESES
**(Conspiracy to Violate The Runco Plaintiffs' Substantive Due Process Rights
Under the Fourteenth Amendment in Violation of 42 U.S.C. § 1983)**

209. The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

210. As set forth more fully above, the Joneses conspired with each other to deprive the Runco Plaintiffs of their substantive due process right to operate/conduct their business free from unreasonable governmental interference and/or arbitrary governmental power.

40

211. The above actions and misconduct of the Joneses constitutes a wrongful combination or agreement to deprive the Runco Plaintiffs of their substantive due process right to operate/conduct their business free from unreasonable governmental interference and/or arbitrary governmental power under the Fourteenth Amendment.

212. At all times relevant to their conspiratorial conduct against the Runco Plaintiffs, the Joneses acted in their individual capacities and under color of state law.

213. Moreover, at all times relevant hereto, the Joneses' actions were willful, wanton, malicious and taken with a reckless or callous disregard for Plaintiffs' federally protected rights under the Fourteenth Amendment, and in furtherance of the conspiracy to deprive the Runco Plaintiffs of their right to operate/conduct their business free from unreasonable governmental interference and/or arbitrary governmental power in the manners outlined in detail above.

214. As a direct and proximate result of the misconduct complained of herein, the Runco Plaintiffs have suffered a deprivation of their guaranteed substantive due process right to operate/conduct their business free from unreasonable governmental interference and/or arbitrary governmental power.

215. As referenced above, the Joneses' constitutional violations as aforesaid completely drove the Runco Plaintiffs out of business, thereby causing

41

substantial economic losses, as well as humiliation, emotional distress and damage to the Runco Plaintiffs' reputation and good will.

216.   The damages suffered by the Runco Plaintiffs as aforesaid were foreseeable and a highly predictable consequence of the Joneses' misconduct as complained of herein.   In fact, by engaging in such misconduct, the Joneses created the opportunity for the harm to occur, or rendered the Runco Plaintiffs more vulnerable to the harm, which would not have existed absent said actions.

WHEREFORE, Plaintiffs Runco Transportation, Inc. and Michael Runco demand judgment on this Count in their favor and against Defendants Cathy Jones and Keith Jones, jointly and/or severally, for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

Respectfully submitted,

/s/ Frank J. Tunis, Jr.
Frank J. Tunis, Jr.
Pa. I.D. No.  84264
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, Pennsylvania 18503
(570) 961-1166
(570) 961-1199 – fax

DATED:  June 30, 2014