**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RUNCO TRANSPORTATION, INC., MICHAEL RUNCO, RANDY PARRY, and DIANE PARRY, | CIVIL ACTION NO. 3:CV-14-1261 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| MID VALLEY SCHOOL DISTRICT, CATHY JONES, BOROUGH OF THROOP, and KEITH JONES, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are Defendants Borough of Throop (the "Borough") and Keith Jones' ("Chief Jones") (collectively, "Borough Defendants") Partial Motion to Dismiss (Doc. 13) and Mid Valley School District (the "District") and Cathy Jones' ("Mrs. Jones")[1] (collectively, "District Defendants") Motion to Dismiss. (Doc. 14.) Plaintiffs Runco Transportation, Inc. ("Runco Transportation"), Michael Runco ("Mr. Runco"), Randy Parry ("Mr. Parry"), and Diane Parry ("Mrs. Parry")[2] (collectively, "Plaintiffs") contend that Defendants retaliated against them in violation of the First Amendment. Additionally, Runco Plaintiffs assert that Defendants deprived them of their Fourteenth Amendment substantive due process rights. For the reasons that follow, Borough Defendants' partial motion to dismiss will be granted in part and denied in part, while District Defendants' motion to dismiss will be denied in its entirety.

---

[1] Where appropriate, Chief Jones and Mrs. Jones are referred to jointly as the "Joneses," and the Borough, the District, and the Joneses are referred to collectively as "Defendants."

[2] Where appropriate, Mr. Parry and Mrs. Parry are referred to jointly as the "Parrys," and Runco Transportation and Mr. Runco are referred to jointly as "Runco Plaintiffs."

**I. Background**

The facts alleged in the Complaint are as follows:

For at least a decade prior to 2006, K.C. Jones Enterprises, a school bus company owned and operated by Chief Jones[3] and his wife, Mrs. Jones, served as the busing and van contractor for the District. (*Compl.*, ¶¶ 12, 20.)  In 2001, the District implemented a competitive bidding process, and although Runco Plaintiffs[4] were the low bidder by hundreds of thousands of dollars, the District awarded the five-year contract to K.C. Jones Enterprises. (*Id.* at ¶¶ 22-24.)  The Joneses were displeased that Runco Plaintiffs bid on the contract. (*Id.* at ¶ 25.)

The District again solicited bids for the busing contract in 2006, and, this time, Runco Plaintiffs were awarded the contract. (*Id.* at ¶¶ 27-28.)  K.C. Jones Enterprises also lost the contract for van transportation, which was taken over directly by the District. (*Id.* at ¶ 29.) From that point forward, the Joneses harbored animosity towards Runco Plaintiffs. (*Id.* at ¶¶ 30-31.)

The Joneses' animus towards Runco Plaintiffs grew, ultimately resulting in Mrs. Jones running for, and being elected, to a seat on the District's School Board in 2009. (*Id.* at ¶¶ 39-40.)  Mrs. Jones' true agenda in running for office was to eliminate Runco Transportation as the busing contractor for the District, going so far as stating that she "ran for office solely to get rid of Runco." (*Id.* at ¶¶ 41-42.)  Chief Jones expressed similar views at the victory celebration on election night. (*Id.* at ¶ 43.)

Shortly after being elected, Mrs. Jones approached Mr. Parry, the Superintendent of the District, and requested all of the District's records concerning Runco Plaintiffs,

---

[3]  At all times relevant to this action, Chief Jones was the Chief of Police for the Borough. (*Compl.*, ¶ 10.)

[4]  Runco Transportation was owned and/or operated by Mr. Runco. (*Compl.*, ¶ 2.)

including personnel and drug and alcohol testing records. (*Id*. at ¶¶ 4, 45.)  After Mr. Parry refused to comply with Mrs. Jones' request, she accused him of covering up for Runco Plaintiffs. (*Id*. at ¶¶ 46-48.)

Mrs. Jones ultimately obtained the District's records regarding Runco Plaintiffs from a different source, and she shared them with her husband. (*Id*. at ¶¶ 51-53.)  Chief Jones subsequently called the drug and alcohol testing company used by the District in an attempt to obtain confidential information. (*Id*. at ¶ 54.)  The company refused to comply with the request, and it continued to refuse to provide the confidential information even after Chief Jones falsely implied that the records related to a criminal investigation. (*Id*. at ¶¶ 55-59.)  The company transcribed that conversation and notified Runco Plaintiffs about the call by letter dated April 23, 2010. (*Id*. at ¶¶ 60-61.)  The Joneses intensified their campaign of retaliation and harassment against Plaintiffs after they were confronted about the improper communication with the testing company. (*Id*. at ¶¶ 62-63.)

Mrs. Jones accused Mrs. Parry, the District's Director of Transportation, of falsifying the District's personnel records for Runco Plaintiffs. (*Id*. at ¶ 64.)  Mrs. Jones would also show up at Mrs. Parry's office unannounced and stare at her while she performed her duties. (*Id*. at ¶ 67.)  Mrs. Jones would raise at virtually every board meeting concerns and issues with the transportation services provided by Runco Plaintiffs, and she would vote against any issue concerning Runco Plaintiffs, including the payment of invoices for services rendered. (*Id*. at ¶¶ 68-70.)  Mrs. Jones also accused the District's Business Manager of being "in bed" with Runco Plaintiffs, and she warned him that he was going to go down with them. (*Id*. at ¶¶ 71-74.)  Mrs. Jones further called Runco Plaintiffs' bank to falsely report problems in an attempt to get the bank to terminate its lending relationship with Runco Plaintiffs. (*Id*. at ¶ 76.)

The Joneses also harassed Runco Plaintiffs and their bus drivers by constantly

3

following the buses without cause, pulling the buses over without justification, and calling the Pennsylvania State Police and the District to report alleged violations. (*Id*. at ¶ 77.)

In a letter dated January 30, 2012, Mr. Parry alerted the Mayor of Throop and Throop Borough Council of Chief Jones' behavior. (*Id*. at ¶ 91.) Mr. Parry stated in his letter that Chief Jones "is using his position and directing the officers in which he is in charge of to go out of their way to target transportation in the Mid Valley School District." (*Id*. at ¶ 95.) In addition, Mr. Runco and Mr. Parry "personally attended Throop Borough Council meetings in a further effort to speak out and put an end to the Joneses' abuse of power and retaliatory actions." (*Id*. at ¶ 96.) Mr. Runco also met with Borough Council President Thomas Lukasewicz and provided him with an explanation of the conduct engaged in by the Joneses against Runco Plaintiffs and the Parrys. (*Id*. at ¶¶ 97-98.)

Stanley Lukowski, the ex-husband of Mrs. Parry, served as the Borough's Mayor at this time. (*Id*. at ¶¶ 99-100.) Mrs. Parry spoke to her ex-husband in his capacity as mayor to complain and speak out about the conduct of the Joneses. (*Id*. at ¶ 101.)

Following these complaints, the Joneses' retaliation against Runco Plaintiffs and the Parrys only intensified. For example, Chief Jones would repeatedly drive around the District's administration building. (*Id*. at ¶ 103.) Additionally, Chief Jones or one of his officers would travel to district buildings and intentionally set off security alarms in the middle of the night which would require Mr. Parry or other administrators to leave their homes to respond. (*Id*. at ¶ 104.)

Mrs. Jones continued to falsely accuse Mrs. Parry of not being truthful in responding to questions about Runco Plaintiffs, and she further accused Mrs. Parry of tampering with District records and covering up for Runco Plaintiffs. (*Id*. at ¶¶ 108-109.) Mrs. Jones also continued to show up unannounced at Mrs. Parry's office in an attempt to obstruct and interfere with her duties as the Director of Transportation. (*Id*. at ¶ 110.) Although Mrs.

Parry had been employed by the District for approximately twenty-two years, with the final three years as Director of Transportation, she was forced to resign in July 2012 as a result of the unbearable and intolerable working conditions caused by Mrs. Jones. (*Id*. at ¶¶ 16-19, 111-112.)  Because she retired three years before her twenty-fifth anniversary with the District, Mrs. Parry sustained a substantial reduction in her monthly pension payment. (*Id*. at ¶ 113.)

The Joneses also continued to target and harass Runco Plaintiffs. (*Id*. at ¶ 114.) Mrs. Jones would follow Runco Transportation buses in her own vehicle and taunt its drivers. (*Id*. at ¶¶ 115-116.)  Mrs. Jones also showed up unannounced at Runco Plaintiffs' bus lot three weeks prior the start of the 2012-2013 school year to personally inspect buses. (*Id*. at ¶ 117.)  Although three of Runco Transportation's buses were awaiting final inspection, the buses were scheduled to be fully inspected before the start of the school year and Runco Transportation was able to fulfill its contract with the District even without these buses, facts which were known by Mrs. Jones. (*Id*. at ¶¶ 118-119.)  Nevertheless, Mrs. Jones ignored these facts, and a special school board meeting was scheduled immediately following her inspection of the buses. (*Id*. at ¶¶ 120, 125.)  The meeting was originally held on September 12, 2012, but because of a lack of notice, the meeting was rescheduled until September 19, 2012. (*Id*. at ¶¶ 126-127.)  Although at the time of the September 19, 2012 meeting Runco Transportation's buses were fully inspected and it was in compliance with its contract with the District, the Joneses manipulated board members to move for and vote in favor of terminating Runco Transportation's contract. (*Id*. at ¶ 128.) Mrs. Jones, however, abstained from voting on the motion to terminate even though she had voted the previous week at the illegal meeting to terminate Runco Transportation's contract. (*Id*. at ¶¶ 129-130.)  The Joneses initiated the effort to terminate Runco Transportation's contract prior to September 12, 2012, and they had a number of

discussions outside of the public forum plotting and lobbying for the contract to be terminated. (*Id*. at ¶¶ 131-132.) Mrs. Jones even arranged a secret meeting about this topic at another board member's home, and she also offered to trade votes on other issues without regard to merit. (*Id*. at ¶¶ 133-134.) Runco Transportation's contract was ultimately terminated. (*Id*. at ¶ 137.)

Mr. Parry was also subject to retaliation as Chief Jones conspired with his wife to have him eliminated as Superintendent. (*Id*. at ¶ 142.) Specifically, it was decided that Mr. Parry's contract would not be renewed unless he "backed off" and stopped complaining to Borough officials about Chief Jones' conduct. (*Id*. at ¶ 143.) As part of that plan, the Joneses solicited Donna Dixon ("Ms. Dixon"), a member of the school board and a personal friend, to approach Mr. Parry and inform him that he needed to back off Chief Jones if he wanted to continue his employment with the District. (*Id*. at ¶ 82, 144-145.) Ms. Dixon also informed Mr. Parry that if he backed off Chief Jones, she would make sure he kept his job. (*Id*. at ¶ 146.)

Because Mr. Parry refused to be bullied by the Joneses and their friends, the Joneses carried out their threat and had Mr. Parry removed as Superintendent. (*Id*. at ¶¶ 147-148.) Specifically, the Joneses plotted and lobbied for the non-renewal of Mr. Parry's contract, and they were able to manipulate school board members to vote in favor of not renewing his contract. (*Id*. at ¶¶ 149-150.) Again, Mrs. Jones offered to trade votes on other issues to board members that voted against the renewal of Mr. Parry's contract. (*Id*. at ¶ 152.) Mr. Parry was removed as Superintendent effective December 31, 2013. (*Id*. at ¶ 153.)

As a result of the foregoing events, Plaintiffs commenced this action against Defendants on June 30, 2014. In the Complaint, the following claims are asserted by all Plaintiffs: First Amendment retaliation against the Joneses (Count I); First Amendment

retaliation against the Borough and the District (Count II); and conspiracy to violate Plaintiffs' First Amendment rights against the Joneses (Count III). Runco Plaintiffs also assert Fourteenth Amendment substantive due process claims against the Joneses (Count IV) and the Borough and the District (Count V), as well as a claim for conspiracy to violate their Fourteenth Amendment rights against the Joneses (Count VI).

On September 5, 2014, Borough Defendants filed a partial motion to dismiss seeking dismissal of all claims except Count III of the Complaint. (Doc. 13.) And, on September 16, 2014, District Defendants moved to dismiss the Complaint in its entirety. (Doc. 14.) Plaintiffs timely filed a brief in opposition to Borough Defendants' motion on November 6, 2014 (Doc. 21), and their brief in opposition to District Defendants' motion was timely filed on November 17, 2014. (Doc. 24.) On November 24, 2014, Borough Defendants filed their reply brief in further support of their motion to dismiss. (Doc. 25.) Lastly, District Defendants' reply brief in further support of their motion was filed on December 1, 2014. (Doc. 26.) The motions to dismiss are thus fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The

statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.  "When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Plaintiffs' First and Fourteenth Amendment claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

A.  **First Amendment Claims**

Counts I-III of the Complaint assert claims implicating Plaintiffs' rights under the First Amendment to the United States Constitution.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

1.  **Counts I-II of the Complaint**

Count I of the Complaint states a First Amendment retaliation claim by all Plaintiffs against the Joneses, while Count II of the Complaint sets forth a First Amendment retaliation claim by all Plaintiffs against the District and the Borough.  A First Amendment retaliation claim requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

a.  **Chief Jones**

Chief Jones seeks dismissal of the First Amendment retaliation claim advanced by all four Plaintiffs.  With respect to Mr. Parry's First Amendment retaliation claim, the basis of Chief Jones' motion to dismiss is that the Complaint "fails to allege what specific retaliatory actions Mr. Jones took against Mr. Parry as opposed to the School District." (Doc. 15, 10.)  Mr. Parry's First Amendment retaliation claim against Chief Jones will not be dismissed.  Here, Mr. Parry alleges that after he engaged in protected conduct, Chief Jones committed various retaliatory acts towards him, such as setting off the security alarms in the middle of the night at District buildings to force Mr. Parry to leave his home and lobbying for

the non-renewal of his contract as Superintendent. These allegations sufficiently detail retaliatory actions taken by Chief Jones against Mr. Parry personally. Mr. Parry will be permitted to proceed with his First Amendment retaliation claim against Chief Jones.

Next, Chief Jones contends that the Complaint fails to identify specific retaliatory acts he took against Mrs. Parry. Rather, Chief Jones contends that the alleged retaliatory actions taken against Mrs. Parry all implicate conduct taken by his wife. (Doc. 15, 10-11.) In opposition, Plaintiffs acknowledge that although the allegations relating to Mrs. Parry's retaliation claim "are directed at Mrs. Jones as opposed to Chief Jones," they argue that Mrs. Parry nevertheless states a claim against Chief Jones because these allegations directly tie his "actual knowledge and acquiescence of his wife's actions against Mrs. Parry that led to her forced reignation." (Doc. 21, 11.)

Mrs. Parry's First Amendment retaliation claim against Chief Jones will be dismissed. The Third Circuit has held that:

> A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs. Our cases have held that actual knowledge and acquiescence suffices for supervisory liability because it can be equated with personal direction and direct discrimination by the supervisor. Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor acquiesced in (i.e., tacitly assented to or accepted) the subordinate's conduct. But where actual supervisory authority is lacking, mere inaction, in most circumstances, does not reasonably give rise to a similar inference. As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have acquiesced in the latter's conduct.

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997) (internal citations and quotations omitted), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Here, as Plaintiffs acknowledge, they do not allege that Chief Jones personally (as opposed to his wife) took any retaliatory action against Mrs. Parry. Moreover, there is nothing in the Complaint suggesting that he had supervisory authority over Mrs. Jones with respect to her alleged

retaliatory conduct towards Mrs. Parry.  As such, Chief Jones "'cannot fairly be said to have acquiesced in [Mrs Jones'] conduct.'" *Smith v. Merline*, 797 F. Supp. 2d 488, 405 (D.N.J. 2011) (quoting *Robinson*, 120 F.3d at 1294).  Accordingly, because the Complaint fails to state Chief Jones' personal involvement in the alleged retaliation against Mrs. Parry, her First Amendment retaliation claim against Chief Jones will be dismissed.

Lastly, Chief Jones argues that Runco Plaintiffs' First Amendment retaliation claim should be dismissed because the Complaint fails to identify his acts of retaliatory conduct against these parties. (Doc. 15, 11.)  Runco Plaintiffs will be permitted to proceed with their First Amendment claim in Count I of the Complaint against Chief Jones.  Runco Plaintiffs allege that Chief Jones engaged in retaliatory conduct against them by targeting, harassing, and /or following Runco's buses and bus drivers.  Chief Jones is also alleged to have retaliated against Runco Plaintiffs by manipulating board members to move for and vote in favor of the termination of Runco Transportation's contract with the District.  These allegations are sufficient to withstand Chief Jones' motion to dismiss.

> **b.    Mrs. Jones**

Mrs. Jones, like her husband, seeks dismissal of all Plaintiffs' First Amendment retaliation claims set forth in Count I of the Complaint.  First, with respect to Mr. Parry's claim, Mrs. Jones contends that he fails to state a claim against her because the Complaint does not sufficiently allege her personal involvement in his no longer being employed as Superintendent. (Doc. 17, 12.)  Mr. Parry will be permitted to proceed with his claim against Mrs. Jones in Count I because his allegations are sufficient to state a First Amendment retaliation claim against Mrs. Jones.  In particular, Mr. Parry asserts that after engaging in protected conduct, Mrs. Jones used her position as a school board member to keep his contract from being renewed, that she plotted and lobbied against the renewal of his contract, and that she had another board member threaten him that he would lose his job

if he did not "back off" her husband. These are adequate allegations of retaliatory conduct to allow Mr. Parry to proceed with his First Amendment claim against Mrs. Jones.

Second, Mrs. Jones seeks dismissal of Mrs. Parry's retaliation claim on the basis that "she had no control over Mrs. Parry's resignation as the Director of Transportation." (Doc. 17, 11.) Mrs. Jones' motion to dismiss Mrs. Parry's claim in Count I will be denied. Among other allegations, Mrs. Parry asserts she engaged in protected conduct and thereafter Mrs. Jones falsely accused her of altering District records and showed up at her office unannounced and interfered with her work. Ultimately, based on her fear of Mrs. Jones, Mrs. Parry alleges that she was constructively discharged in July 2012. These allegations sufficiently detail retaliatory action that would deter a person of ordinary firmness from exercising her constitutional rights, as well as a causal link between constitutionally protected conduct and the alleged retaliatory action. Thus, Mrs. Parry will be permitted to proceed with her First Amendment retaliation claim against Mrs. Jones.

Lastly, Mrs. Jones argues that Runco Plaintiffs fail to allege her personal involvement in any retaliatory conduct because she abstained from voting on the motion to terminate Runco Transportation's contract with the District. (Doc. 17, 11-12.) Runco Plaintiffs adequately allege retaliatory conduct taken by Mrs. Jones that was causally related to their alleged protected conduct. Specifically, Runco Plaintiffs allege that they engaged in protected conduct, and, in response, Mrs. Jones: harassed and taunted Runco drivers; followed Runco Transportation's buses; attempted to personally inspect Runco Transportation's buses; manipulated the school board to terminate Runco Transportation's contract; arranged a secret meeting about the termination of the Runco Transportation contract; and offered to trade votes on other issues to those board members that voted to terminate the contract. These are sufficient allegations that Mrs. Jones retaliated against Runco Plaintiffs in response to their engaging in protected First Amendment activity.

Accordingly, Mrs. Jones' motion to dismiss Runco Plaintiffs' First Amendment retaliation claim in Count I of the Complaint is without merit.

### c. The Borough

Count II of the Complaint asserts a claim by all Plaintiffs against the Borough for First Amendment retaliation. The Borough's liability for the alleged constitutional violation implicates the Supreme Court's decision in *Monell v. Department of Soc. Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S. Ct. 2018. Rather, "a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006) (citing *Monell*, 436 U.S. at 690, 98 S. Ct. 2018).

Mr. Parry and Runco Plaintiffs will be permitted to proceed with their First Amendment retaliation claims against the Borough. Here, the sole argument advanced by the Borough in seeking dismissal of Count II of the Complaint is its contention that Plaintiffs fail to sufficiently allege Chief Jones' personal involvement in any retaliatory conduct. (Doc. 15, 13.) But, as detailed above, Mr. Parry and Runco Plaintiffs sufficiently aver Chief Jones' personal participation in the alleged retaliation. And, because the Complaint alleges that Chief Jones was a Borough policymaker, Mr. Parry and Runco Plaintiffs' First Amendment retaliation claim against the Borough will not be dismissed. However, the Borough's motion to dismiss Mrs. Parry's First Amendment claim will be granted because she fails to allege that her constitutional rights were violated by any actions of Chief Jones.

### d. The District

Count II of the Complaint also asserts a claim by all Plaintiffs against the District for

First Amendment retaliation. The District, like the Borough, seeks dismissal of the retaliation claims set forth in Count II. The District argues that because the Complaint fails to allege that Mrs. Jones engaged in any retaliatory conduct towards Mr. Parry, Mrs. Parry, or Runco Plaintiffs, they fail to state a First Amendment retaliation claim against the District. (Doc. 17, 12-14.) However, as explained, all Plaintiffs sufficiently state a First Amendment retaliation claim against Mrs. Jones. Moreover, the Complaint adequately alleges that Mrs. Jones was a duly authorized policymaker for the District. The District's motion to dismiss Count II will be denied, and all Plaintiffs will be permitted to proceed with their First Amendment retaliation claim against the District.

### 2. Count III of the Complaint

Count III of the Complaint, brought by all Plaintiffs, sets forth a claim against the Joneses for conspiracy to violate their First Amendment rights. Mrs. Jones advances similar reasons for dismissal of the conspiracy claim that she raised in moving to dismiss the First Amendment retaliation claim in Count I of the Complaint.[5]

To successfully plead their § 1983 conspiracy claim, Plaintiffs "must [allege] that persons acting under color of state law conspired to deprive [them] of a federally protected right." *Ashton v. City of Uniontown*, 459 F. App'x 185, 190 (3d Cir. 2012). "As a threshold matter . . . a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (citing *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir. 1987)). Thus, a § 1983 conspiracy claim requires "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Williams v. Fedor*, 69 F. Supp. 2d 649, 665 (M.D. Pa. 1999) (quoting *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir.1999)).

---

[5] Chief Jones did not move to dismiss Count III of the Complaint.

Here, all Plaintiffs adequately state a § 1983 conspiracy claim against Mrs. Jones. As stated, the Parrys and Runco Plaintiffs all set forth viable First Amendment retaliation claims against Mrs. Jones. Moreover, the allegations in the Complaint more than sufficiently outline concerted actions taken by the Joneses in retaliation to Plaintiffs exercising their First Amendment rights. Accordingly, Plaintiffs will be permitted to proceed with the § 1983 conspiracy claim in Count III of the Complaint.

**B.     Fourteenth Amendment Claims**

Counts IV-VI of the Complaint assert claims implicating Runco Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment provides, in pertinent part, that a state shall not "deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const. amend. XIV, § 1.

Runco Plaintiffs set forth in the Complaint a Fourteenth Amendment substantive due process claim against the Joneses (Count IV) and the Borough and the District (Count V), as well as a conspiracy to violate their substantive due process rights claim against the Joneses (Count VI). Runco Plaintiffs' Fourteenth Amendment substantive due process claim is based on their "protected liberty interest/right to operate/conduct their business free from unreasonable governmental interference and/or the arbitrary exercise of governmental power." (*Compl.*, ¶ 186.)

"The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) (citing *Greene v. McElroy*, 360 U.S. 474, 492, 79 S. Ct. 1400, 1411, 3 L. Ed. 2d 1377 (1959)). However,

> "[T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause." *Bernard v. United Township*

16

>   *High Sch. Dist*. No. 30, 5 F.3d 1090, 1092 (7th Cir. 1993).  "'It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.'" *Id*. (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)).

*Id*. at 1259-60.

This right "to engage in any of the common occupations of life," though, is "fairly narrow," and "[a] violation of that liberty is not established absent a complete revocation or a substantial interference with one's chosen occupation." *Schultz v. Hughesville Borough*, No. 10-262, 2011 WL 3273076, at *15 (M.D. Pa. July 29, 2011) (citations omitted). Additionally, substantive due process protects against the arbitrary exercise of government power. *Id*. at *16 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). "To establish a substantive due process violation, the plaintiff must show the government official's conduct 'shocks the conscience.'" *Id*. (citing *Lewis*, 523 U.S. at 846, 118 S. Ct. 1708).

In view of the allegations in the Complaint, Runco Plaintiffs will be permitted to proceed with their substantive due process claims against all Defendants. Here, Runco Plaintiffs allege that Chief Jones and Mrs. Jones, as authorized policymakers for the Borough and District, respectively, engaged in a pattern of conduct designed to interfere with and get back at them for obtaining the busing contract for the District, which ultimately resulted in them being run out of business. Among other allegations relating to Defendants' substantial interference with their operations, Runco Plaintiffs allege: Chief Jones falsely indicated to the District's alcohol testing company that Runco Transportation was being criminally investigated; Mrs. Jones repeatedly asserted at board meetings and executive sessions that Runco Plaintiffs did a poor job and should be terminated as the busing contractor; the Joneses would personally harass and follow Runco's buses; Mrs. Jones offered to trade votes on other issues to those voting to terminate Runco Plaintiffs' contract; and the Joneses manipulated other school board members to vote in favor of terminating

their contract with the District. As a consequence of Defendants' conduct, Runco Plaintiffs allege that they were completely driven out of business, thereby resulting in a discounted sale of some buses and the repossession of others. These allegations set forth a revocation or substantial interference with Runco Plaintiffs' right to pursue their occupation, and Defendants' motions to dismiss the substantive due process claims in Counts IV and V of the Complaint will be denied. *See San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 703-04 (5th Cir. 1991) (reversing district court's order granting summary judgment and permitting the plaintiff to proceed on her § 1983 claim where she presented evidence that police harassment caused her to lose so much business she was forced to close her business and default on her lease); *Benigni v. City of Hemet*, 879 F.3d 473, 478 (9th Cir. 1989) (due process claim was properly submitted to the jury where evidence was sufficient to "support a conclusion that excessive and unreasonable police conduct was intentionally directed toward Benigni's bar to force him out of business."); *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 486-87 (M.D. Pa. 2012) (allegations that the defendants' harassment made it financially impossible for the plaintiff to operate a nightclub more than sporadically stated a due process claim); *cf. Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (plaintiffs' ability to succeed on due process claim that they were deprived of liberty interest depended "on whether they can show that the alleged harassment 'removed or significantly altered' plaintiffs' liberty and property interest in their business.").

    Runco Plaintiffs will also be permitted to proceed with the conspiracy claim against the Joneses in Count VI of the Complaint. Runco Plaintiffs sufficiently state a substantive due process claim against the Joneses, and the Complaint identifies, in detail, actions taken in concert by the Joneses with the specific intent to violate Runco Plaintiffs' substantive due process rights. Therefore, the conspiracy claim in Count VI of the Complaint will not be

18

dismissed.

**C.    Qualified Immunity**

In addition to arguing that Plaintiffs fail to state First and Fourteenth Amendment claims, Mrs. Jones argues that dismissal of these claims is mandated on qualified immunity grounds. State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The doctrine of "qualified immunity . . . 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (internal citation omitted)). In determining whether a defendant is entitled to qualified immunity, a court considers whether the official's acts violated a constitutional or statutory right and (if so) whether that right was clearly established at the time of the violation. *See Yarris v. County of Del.*, 465 F.3d 129, 140-41 (3d Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

Here, Plaintiffs adequately allege claims against Mrs. Jones for violations of their constitutional rights. However, the question remains as to whether a constitutional violation in fact occurred. While "it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (quoting *Curley v. Klem*,

298 F.3d 271, 277-78 (3d Cir. 2002)).  Indeed, the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009).  This litigation involves one of "the vast majority of cases" where a determination of qualified immunity is inappropriate on a motion to dismiss. *See id*.  Therefore, the present application for qualified immunity is premature, although Mrs. Jones may raise the argument again at a later stage in the proceedings.

**D.     Punitive Damages**

Lastly, Mrs. Jones seeks dismissal of Plaintiffs' request for punitive damages.  "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others" *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).  Here, the allegations in the Complaint, taken as true, set forth sufficient facts which would warrant a jury to assess punitive damages against Mrs. Jones.  As such, the motion to dismiss the punitive damages claim will be denied.

### IV. Conclusion

For the above stated reasons, Mrs. Parry's First Amendment retaliation claims against Chief Jones and the Borough will be dismissed.  The motions to dismiss will be denied in all other respects.

An appropriate order follows.


February 17, 2015                                          /s/ A. Richard Caputo
Date                                                               A. Richard Caputo
                                                                     United States District Judge